Benjamin D. KING, Appellant,

v.

IOWA CIVIL RIGHTS COMMISSION, Appellee,

and

Carroll Community School District, Intervenor-Appellee.

No. 68666.

Supreme Court of Iowa.

May 18, 1983.

Rehearing Denied June 9, 1983.

William H. Michelson, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and Victoria L. Herring, Asst. Atty. Gen., for appellee Iowa Civil Rights Com'n.

Ronald H. Schechtman, Carroll, for intervenor-appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, McGIVERIN, LARSON and SCHULTZ, JJ.

McGIVERIN, Justice.

The central issue on this appeal is whether the district court on judicial review erred in holding that the respondent Iowa Civil Rights Commission's order which found no discrimination on the basis of religion was supported by substantial evidence when the record is viewed as a whole. Iowa Code § 17A.19(8)(f) (1981). We, too, find sufficient evidence to support the Commission's finding and therefore affirm the district court.

This is a case of alleged religious discrimination in violation of Iowa Code section 601A.6(1)(a). The stipulated facts show that petitioner Benjamin D. King, a Jew, was employed by intervenor Carroll Community School District (District) as a special education work-study coordinator to perform both teaching and administrative duties. King's contract was for 195 workdays per year rather than the 190 workdays for which regular teachers were employed. King, like all school employees, was allowed two personal leave days per year and was not required to work on regularly scheduled school holidays such as Christmas and Easter. A master contract, or collective bargaining agreement, relating to the employees' work year, existed between the District and the Carroll Education Association, an "employee organization" under Iowa Code section 20.3(4) of which petitioner was a member.

The master contract only provided for payment for school calendar days worked and made no provision for paid time off in order to observe religious or other holidays or vacations. If an employee was absent from work, unless sick or authorized by the school board, the master contract provided for a wage deduction equal to pay for one day of service. In King's case this amounted to one $\frac{1}{195}$th of his annual salary.

In 1977 King requested three days off work in order to observe the Jewish High Holy Days associated with Rosh Hashanah, September 13 and 14, and Yom Kippur, September 22. These three days fell on normal working days under the master contract and school calendar. The District granted King's request, but stated that either he must take unpaid leave for each day

off, or he would have to take one day of unpaid leave and use his two days of paid personal leave. King chose the latter.

King then filed a complaint with the respondent agency alleging religious discrimination in violation of Iowa Code section 601A.6(1)(a). After a contested case hearing, the hearing officer entered a proposed decision in King's favor, but the Commission ordered the complaint dismissed. Iowa Code § 601A.15(10). The Commission found no prima facie case of discrimination had been established. Alternatively, the Commission ruled that the School District had reasonably accommodated King's religious beliefs and that no further accomodation could be made without undue hardship to the District.

King filed a petition for judicial review in the district court. Iowa Code § 17A.19. The School District intervened. The district court affirmed the Commission's analysis and order. King now appeals. Iowa Code § 17A.20.

■ I. *Scope of review.* We recently discussed our scope of review for appeals from district court judicial review of civil rights complaints in *Peoples Memorial Hospital v. Iowa Civil Rights Commission,* 322 N.W.2d 87, 90–92 (Iowa 1982). In short, this court sits to correct errors of law made by the district court on judicial review. In so doing, we apply the substantial evidence rule of section 17A.19(8)(f) to determine whether there is sufficient evidence to warrant the decision the commission did make, and accordingly, whether our conclusions are the same as those of the district court. *Id.*

II. *Analytical framework.* This is a case of first impression in Iowa concerning alleged religious discrimination. The parties assume our selection of the proper analytical framework for deciding cases under the Iowa civil rights statute, Iowa Code ch. 601A, will be guided by federal cases. Our prior decisions clearly warrant such an as-

sumption. See *Iowa State Fairgrounds Security v. Iowa Civil Rights Commission,* 322 N.W.2d 293, 296 (Iowa 1982), and the cases cited therein.

The basic allocation of burdens and order of presentation of proof which we have adopted in prior civil rights cases, *e.g., Linn Co-operative Oil Co. v. Quigley,* 305 N.W.2d 729, 733 (Iowa 1981) (sex discrimination), were set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). By analogy the same burdens and order of presentation of proof which the federal courts use in religious discrimination cases, 42 U.S.C. § 2000e–2(a)(1) (1976), apply to the present case. Iowa Code section 601A.6(1)(a), for the purposes of this case, is materially the same as the federal statute, and we conclude that adoption of the federal analysis outlined below implements the spirit of our statute.

■ First, the complainant has the burden of proving by a preponderance of evidence a prima facie case of discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093, 67 L.Ed.2d at 215. A prima facie case of religious discrimination is established if the complainant demonstrates

(1) that he or she had a bona fide belief that compliance with an employment requirement would be contrary to his or her religious belief or practice; (2) that he or she informed the employer about the conflict; and (3) that he or she was discharged or penalized for failing to comply with the conflicting employment requirement.

*Murphy v. Edge Memorial Hospital,* 550 F.Supp. 1185, 1187 (M.D.Ala.1982); *Brener v. Diagnostic Center Hospital,* 671 F.2d 141, 144 (5th Cir.1982); *Brown v. General Motors Corp.,* 601 F.2d 956, 959 (8th Cir.1979); *Anderson v. General Dynamics Convair Aerospace Div.,* 589 F.2d 397, 401 (9th Cir. 1978), *cert. denied sub nom. International*

Ass'n. of Machinists, etc. v. Anderson, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979).

█ If the complainant succeeds in establishing a prima facie case, the burden then shifts to the employer to articulate or introduce evidence to show that he could not accommodate the employee's beliefs without incurring undue hardship. 42 U.S.C. § 2000e(j) (1976); [1] *Brener,* 671 F.2d at 144; *see also Burdine,* 450 U.S. at 253, 254, 101 S.Ct. at 1093, 1094, 67 L.Ed.2d at 215, 216 (burden shifts to defendant to rebut the presumption of discrimination by producing evidence or articulating that the complainant was rejected for a legitimate nondiscriminatory reason). The duty to accommodate in an alleged religious discrimination employment case requires the employer to explore and implement alternatives which are compatible with the employee's religious beliefs without (1) compromising the employment entitlements of other employees or (2) requiring the employer to incur more than de minimis costs. *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 83–84, 97 S.Ct. 2264, 2276–77, 53 L.Ed.2d 113, 130–31 (1977).

█ Should the employer meet this burden, the complainant then has an opportunity to prove by a preponderance of the evidence that the accommodations offered by the employer were pretexts that merely veiled the employer's discriminatory practices. *See Burdine,* 450 U.S. at 215, 101 S.Ct. at 1095, 67 L.Ed.2d at 215.

"In these cases, complainant has the burden of proof [to show discrimination in violation of Iowa Code section 601A.6(1)(a)], not the respondent. The burden of persua-

sion never shifts." *Quigley,* 305 N.W.2d at 733.

█ III. *Sufficiency of the evidence.* With the above allocation of burdens and order of presentation of proof in mind, we apply the substantial evidence test. Iowa Code § 17A.19(8)(f). Evidence is substantial if a reasonable person would find it adequate for reaching a decision. *Peoples Memorial Hospital,* 322 N.W.2d at 91.

King alleged that he had been discriminated against in his employment on the basis of his religion. Iowa Code section 601A.6(1)(a) (1977), which is identical to the provision in the current code, provided in part as follows:

1. It shall be unfair or discriminatory practice for any:

a. Person to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, *or to otherwise discriminate* in employment *against* any applicant for employment or *any employee because of the* age, race, creed, color, sex, national origin, *religion* or disability *of such* applicant or *employee, unless based upon the nature of the occupation*

. . . .

(Emphasis added.)

The agency ruled (1) that King had failed to establish a prima facie case of discrimination and (2) that even if he had established a prima facie case the District had made reasonable accommodations.

In order to facilitate our application of the substantial evidence test here, it is helpful to view the evidence, which was before the agency as stipulated facts, on a model of our analytical framework.

1. Section 2000e(j) is part of the definitional section of the federal civil rights act. It provides as follows:

The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's reli-

gious observance or practice without undue hardship on the conduct of the employer's business.

Although the Iowa civil rights act does not contain similar language, we believe the duty to accommodate is a necessary part of the interpretation of our Iowa Code section 601A.6(1)(a) in the alleged religious discrimination context.

King · School District

## ULTIMATE BURDEN OF PROVING INTENTIONAL DISCRIMINATION REMAINS ON COMPLAINANT

1. Prima Facie Case (proven by complainant):

    a. Belief he should not work on Rosh Hashanah and Yom Kippur;

    b. Request to District for days off; and

    c. King was forced to use his personal leave days and lose a day's pay, when such was not required of Christians who observed Christmas and Easter which fell on scheduled school holidays.

2. Burden of production (the District articulated or showed):

    a. King had no difficulty getting off work for the days he requested;

    b. The District policy is that any teacher can have time off for religious holidays, without pay;

    c. There were no paid vacations or holidays provided in the master contract;

    d. The cost to the District for hiring a substitute was $35 per day; and

    e. The work-study students who King supervised did not attend their jobs during non-school days.

3. Alleged Proof of Pretext (found insufficient by Commission):

    a. Christian teachers were able to observe their religious holidays without losing a day's pay;

    b. King proposed to do any of the following during the scheduled winter or spring break: (1) make contacts with new employers to locate jobs for students; (2) contact present employers to evaluate students' performance and observe working conditions; (3) attend employer-teacher meetings.

---

The purpose of this model is to emphasize that the *McDonnell-Burdine* analytical framework requires that the fact finder follow a step-by-step procedure. In the present case, the agency ruled King had failed to establish a prima facie case because "Carroll Community School District did not provide Christmas vacation and Easter vacation with pay for those observing Christmas, Easter, Maundy Thursday or Good Friday, [and therefore] they were not required to permit Ben King to observe Rosh Hashanah and Yom Kippur, without a loss of pay."

What the agency did was to view King's burden of establishing a prima facie case in light of evidence introduced by the District under its burden of production as to reasonable accommodation. Under our reading of the *McDonnell-Burdine* analytical framework this was incorrect because each step of the analysis is independent of the next. Whether King established a prima facie case depends only on establishing (1) that his religious beliefs conflicted with his employment requirements, (2) that he informed the District of the conflict, and (3) that he was penalized for adhering to those

beliefs. We hold that King established a prima facie case; the district court erred in ruling that substantial evidence supported the agency's conclusion he had not. *Cf. United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether 'the defendant intentionally discriminated against the plaintiff.' ").

Since King established his prima facie case (step one) it is necessary to consider whether the District reasonably accommodated his beliefs (step two). The agency, ruling in the alternative, found reasonable accommodation. Substantial evidence supports this conclusion.

Unlike the majority of decided cases in which religious discrimination is alleged, King was not disciplined by his employer because of his religious practices. Yet despite the District's undisputed accommodation of allowing King to take the days off and arranging for and paying his substitute, the issue remains whether its actions were reasonable and whether the District should have been required to further accommodate King by reimbursing him for his lost income.

■ The degree of accommodation required has not been defined; the employer must simply make some effort to accommodate the employee's religious beliefs. *See Hardison,* 432 U.S. at 74 n. 9, 97 S.Ct. at 2272 n. 9, 53 L.Ed.2d at 125 n. 9; *Burns v. Southern Pacific Transportation Co.,* 589 F.2d 403, 405–06 (9th Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979). Once an attempt to accommodate has been made which the employee views as inadequate, the question becomes whether additional accommodation would constitute "undue hardship." *Id.* at 406. "Undue hardship" is something greater than hardship and must be proved by more than assumptions or opinions based on hypothetical facts. *Anderson,* 589 F.2d at 402; *Ed-*

*wards v. School Board of the City of Norton, Virginia,* 483 F.Supp. 620 (S.D.Va. 1980), *vacated on other grounds,* 658 F.2d 951 (4th Cir.1981).

■ We find, as did the district court, substantial evidence in the record to support the agency's finding of reasonable accommodation. Therefore, petitioner King failed to sustain his ultimate burden of proving intentional discrimination in violation of section 601A.6(1)(a). Whatever discrimination he may have perceived was based on the nature of his occupation as a school teacher. The School District's refusal to allow King to absent himself with full pay was consistent with its policy of religious leaves of absence and the master contract governing working conditions and terms for all employees. The accommodations made for King's beliefs were not merely a pretext which veiled intentional religious discrimination. *See Equal Employment Opportunity Commission v. Picoma Industries, Inc.,* 495 F.Supp. 1 (S.D.Ohio 1978) (reasonable accommodation found in allowing sabbatarian to leave work at sundown on Fridays without loss of seniority or disciplinary action; however, the employee was not paid for the hours he missed and the employer was not required to make an exception for the sabbatarian in its policy concerning switching shifts); *see also Pinsker v. Joint District No. 28J of Adams and Arapahoe Counties,* 554 F.Supp. 1049 (D.C.Colo.1983) (refusing a public school teacher paid leave time to attend religious services of the Jewish faith did not unconstitutionally interfere with the free exercise of his religion).

Greater accommodation of King's beliefs cannot be expected. The disparity which King perceives was aptly dismissed in *Rankins v. Commission on Professional Competence of the Ducor Union School District,* 24 Cal.3d 167, 178, 154 Cal.Rptr. 907, 914, 593 P.2d 852, 859 (1979):

On the contrary, the effect of the accommodation is simply to lessen the discrepancy between the conditions imposed on [complainant's] religious observances and those enjoyed, say, for observances by adherents of majority religions as a result of the five-day week and the Christmas

and Easter vacations or regular school calendars. [The California Constitution] does not require full equality of treatment of all employees' religious practices under all circumstances. It does require whatever reduction of inequality of treatment is possible through reasonable steps that do not impose undue hardship on employers.

We have considered all of the contentions raised by petitioner, but have discussed only those applicable to the outcome we reach. The alternative ruling of the agency that the School District made reasonable accommodations of King's beliefs is supported by substantial evidence. The district court correctly affirmed the Commission's order dismissing the complaint. We, however, reach the same result as the district court by different reasoning. *State ex rel. Miller v. National Farmers Organization,* 278 N.W.2d 905, 906 (Iowa 1979).

AFFIRMED.